No. 79–1795.   BLAIR *v.* KENTUCKY; and

No. 79–1798.   CARPENTER ET AL. *v.* KENTUCKY.   Sup. Ct. Ky.   Certiorari denied.   Reported below: 592 S. W. 2d 132.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

These petitions present the question whether the decision of the Supreme Court of Kentucky rests upon an independent and adequate state procedural ground that bars this Court's review of petitioners' constitutional claim, *inter alia,* that their convictions were based on a record lacking sufficient evidence.   Because the question of when and how failure to comply with state procedural rules precludes our consideration of a federal constitutional claim is itself a federal question, *Henry* v. *Mississippi,* 379 U. S. 443, 447–448 (1965), and because I have serious doubts whether the Kentucky Supreme Court could properly insist on compliance with the procedural rule it invoked, I dissent from the denial of certiorari.

Petitioners Carpenter, Borders, and Blair were convicted in a Kentucky trial court of wanton endangerment in the first degree and criminal mischief in the third degree.   The charges stemmed from the allegation that they fired a shotgun at businesses and automobiles injuring one person and damaging property.   All three petitioners moved for directed verdict of acquittal at the close of the Commonwealth's case, and also moved for new trial after the jury verdict.   Both motions were grounded on claims that the evidence was insufficient to sustain guilty verdicts.   However, no petitioner

moved for a directed verdict on that ground at the close of all the evidence.

The Kentucky intermediate appellate court entertained petitioners' appeals from their convictions, and set them aside after finding that the evidence was insufficient to sustain the convictions.[1] The Supreme Court of Kentucky affirmed as to Carpenter and Borders, but reversed as to Blair. The court rejected the Commonwealth's argument that under state procedural law, *Kimbrough* v. *Commonwealth*, 550 S. W. 2d 525, 529 (Ky. 1977), petitioners Carpenter and Borders' failure at the close of all the evidence to move for a directed verdict for insufficiency of the evidence forfeited their right of review on that ground. Citing *Vachon* v. *New Hampshire*, 414 U. S. 478, 480 (1974), the Kentucky Supreme Court not only held that "the evidence was insufficient" but also concluded that "the record before us contains *no relevant evidence* linking Carpenter and Borders to the charged offenses." (Emphasis added.) Blair's case differed, the court held, because there was "relevant evidence" as to him. See *Thompson* v. *Louisville*, 362 U. S. 199, 206 (1960). The court therefore applied the *Kimbrough* rule and held that Blair had waived his right to raise the insufficiency-of-the-evidence issue on appeal.

The Commonwealth filed a petition for rehearing. This time, the Kentucky Supreme Court reversed itself and reinstated the convictions of Carpenter and Borders. The court held that, "as clarified in *Kimbrough*, . . . in order for the issue of the sufficiency of the evidence to be preserved for appellate review, the party wishing to use the insufficiency as a basis for his appeal must have moved for a directed verdict at the close of all the evidence, not just at the close of the Commonwealth's case in chief." 592 S. W. 2d 132, 133 (1979).

---

[1] The Court of Appeals initially remanded for a new trial but six months later withdrew that original opinion and substituted a new one reversing the convictions outright.

But *Kimbrough* was decided eight months after petitioners' trial and announced new Kentucky law. Prevailing Kentucky law at the time of the trial embodied the procedural rule that the issue of insufficiency of the evidence was preserved for appellate review when the motion for a directed verdict was made *either* at the close of the Commonwealth's case *or* at the close of all the evidence. *Crain* v. *Commonwealth*, 484 S. W. 2d 839, 842 (1972).[2] Plainly petitioners could not fairly be charged with anticipating the new rule first announced eight months after their trial. This is thus clearly a case where "[n]ovelty in procedural requirements cannot be permitted to thwart review in this Court applied

---

[2] Every other case cited by the Kentucky Supreme Court in support of the *Kimbrough* procedural rule was decided after *Kimbrough*. The Commonwealth's brief cites two cases, *Delong* v. *Commonwealth*, 225 Ky. 461, 9 S. W. 2d 136, 137 (1928), and *Harvey* v. *Commonwealth*, 423 S. W. 2d 535, 537 (Ky. 1967), both decided before petitioners' trial, for the view that *Kimbrough* merely reiterated prior state law. If anything, however, these two cases lend support for the opposite proposition that, prior to *Kimbrough*, the court would review a claim that the trial court erred in denying a motion for a directed verdict made at the close of the prosecutor's case. In *Delong,* the defendants claimed that the trial court's failure to direct a verdict on their motion at the close of the Commonwealth's case was reversible error. The appellate court noted that, instead of resting their case after their motion, defendants proceeded to "take the stand and . . . furnis[h] enough evidence themselves to sustain the conviction." 225 Ky., at 463, 9 S. W. 2d, at 137. The court therefore declined to reverse the trial court, not because defendants failed to renew their motions for directed verdicts, but precisely because the court, after reviewing the full evidentiary record, found sufficient evidence to support their convictions.

In *Harvey,* the court similarly concluded after a review of all the evidence that "any deficiency which may have existed in the Commonwealth's evidence" was rectified after defendant presented his evidence. 423 S. W. 2d, at 537. For this reason, the court found no reversible error in the trial court's failure to direct the verdict at the conclusion of the Commonwealth's evidence. This appellate posture also has been regularly followed by the Kentucky courts in the civil context in reviewing a motion for a directed verdict at the close of the plaintiff's case. *E. g., Lyon* v. *Prater,* 351 S. W. 2d 173, 175 (Ky. 1961).

for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *NAACP* v. *Alabama,* 357 U. S. 449, 457–458 (1958). See *Henry* v. *Mississippi,* 379 U. S., at 448, n. 3.[3]

These cases are particularly compelling given the two explicit findings by the Supreme Court and Court of Appeals of Kentucky to the effect that the evidence was not only insufficient but also irrelevant to support the guilty verdicts of Carpenter and Borders.[4] Although petitioners may now obtain federal habeas corpus relief, it is wasteful of sparse judicial resources to require resort to that remedy since the issues presented are only questions of law and no hearing is required to develop a record upon which to decide the cases.[5]

Because I am unable to reconcile the Kentucky Supreme Court's procedural holding in the present cases with its unambiguous procedural rule applicable at the time of petitioners' trial, I would grant the petitions for certiorari.

---

[3] The Commonwealth's argument that Kentucky Criminal Rule 9.54 (2), applicable at the time of petitioners' trial, effectively embodied the *Kimbrough* rule, is unavailing. The Kentucky Supreme Court relied solely on *Kimbrough* and later cases in reversing itself and did not so much as mention Rule 9.54 (2). In any event, the Rule, which deals with motions for jury instructions "fairly and adequately presented," on its face does not support the *Kimbrough* rule, and interpretative case law is similarly unsupportive.

[4] Because the convictions of Carpenter and Borders were struck down under the "no evidence" test, *Thompson* v. *Louisville,* 362 U. S. 199, 206 (1960), it follows *a fortiori* that the convictions were faulty under the now controlling insufficiency-of-the-evidence constitutional standard, *Jackson* v. *Virginia,* 443 U. S. 307, 318–319 (1979). Moreover, although the Supreme Court found "relevant evidence" linking Blair to the crime, this would not end the inquiry as to him under the *Jackson* test.

[5] This is certainly true at least as to Carpenter and Borders.